**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **MARKEL AMERICAN INSURANCE COMPANY a/s/o CERTIFIED CRANE & RIGGING SERVICES, LLC** | § § § § | |
| **Plaintiff,** | § § | **CIVIL ACTION NO. 2:24-cv-217** |
| v. | § § | **FIRST AMENDED COMPLAINT** |
| **THE WHITING-TURNER CONTRACTING COMPANY; LEINNEWEBER CONCRETE CONSTRUCTION, LLC; IRON MAN STEEL, LLC d/b/a COOL RIVER STEEL; MARTIN MACIAS D/B/A CHUKO CONCRETE; PROFESSIONAL SERVICE INDUSTRIES, INC. D/B/A INTERTEK PSI; and REINFORCING STEEL SUPPLY INC.** | § § § § § § § § § § § | |
| **Defendants.** | | |

**FIRST AMENDED COMPLAINT**

COMES NOW, Plaintiff Markel American Insurance Company, as subrogee of Certified Crane & Rigging Services, LLC, and makes and files this, its First Amended Complaint against and complaining of Defendants, The Whiting-Turner Contracting Company, Leinneweber Concrete Construction, LLC, Iron Man Steel, LLC d/b/a Cool River Steel, Martin Macias d/b/a Chuko Concrete, Professional Service Industries, Inc. d/b/a Intertek PSI, and Reinforcing Steel Supply Inc., and in support thereof would show the Court the following:

**PARTIES**

1. Plaintiff, Markel American Insurance Company ("Plaintiff" or "MAIC"), as subrogee of Certified Crane & Rigging Services, LLC ("Certified Crane" or "MAIC's Insured")

is an insurance company organized and existing under the laws of the State of Virginia with its principal place of business located at 4521 Highwoods Parkway Glen Allen, Virginia.

2. At all times relevant hereto, MAIC was authorized to issue and administer insurance policies in the State of Texas.

3. —'Defendant The Whiting-Turner Contracting Company ("Whiting-Turner") is a foreign corporation organized and existing under the laws of the State of Maryland with a principal place of business located at 300 E Joppa Road, Baltimore, Maryland.

4. At all material times, Whiting-Turner was and is in the business of providing general contracting services.

5. Defendant Leinneweber Concrete Construction, LLC ("Leinneweber") is a limited liability corporation organized and existing under the laws of the State of Texas with a principal place of business located at 410 Rancho Encino Drive, San Marcos, Texas 78666.

6. At all material times, Leinneweber was and is in the business of providing industrial concrete manufacturing, fabricating, and construction services.

7. Defendant Iron Man Steel, LLC, d/b/a Cool River Steel ("Cool River") is a corporation organized and existing under the laws of the State of Texas with a principal place of business located at 7064 FM1784, Pleasanton, Texas 78064.

8. At all material times, Defendant Cool River was and is in the business of providing rigging and erecting construction services.

9. Defendant Martin Macias d/b/a Chuko Concrete ("Chuko Concrete") was an individual citizen of the State of Texas residing at 1532 Lea Lane, Corpus Christi, Texas 78415.

10. At all material times, Defendant Chuko Concrete was and is in the business of manufacturing, fabricating, designing, constructing, and/or testing of concrete construction materials.

11. Defendant Professional Service Industries, Inc. d/b/a Intertek PSI ("Intertek") is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 545 East Algonquin Road Arlington Heights, IL 60005.

12. Upon information and belief, at all material times, Defendant Intertek was and is in the business of manufacturing, fabricating, designing, constructing, and/or testing of concrete construction materials.

13. Defendant Reinforcing Steel Supply Inc. ("RSS") is a corporation organized and existing under the laws of the State of Texas with a principal place of business located at 13720 Avenue K, Austin, Texas, 78728.

14. Upon information and belief, at all material times, Defendant RSS was and is in the business of manufacturing, fabricating, designing, constructing, selling, distributing, and/or testing of concrete construction materials including rebar.

## **VENUE & JURISDICTION**

15. Plaintiff, MAIC, is a citizen of Virginia. Defendant, Whiting-Turner, is a citizen of Maryland. Defendant Intertek is a citizen of Delaware. Defendants Cool River, Leinneweber, Chuko Concrete, and RSS are citizens of Texas. As such, diversity exists between Plaintiff and Defendants.

16. The amount in controversy in this matter exceeds $75,000, exclusive of interests and costs.

17. Accordingly, the United States District Court has jurisdiction over this matter based upon diversity if citizenship pursuant to 28 U.S.C. § 1332.

18. Venue is proper in the Unites States District Court for Southern District of Texas, Corpus Christi Division, pursuant to 28 U.S.C. Sec 1391(b) as a substantial part of the events and omissions giving rise to the claim occurred in San Patricio County, Texas.

## GENERAL ALLEGATIONS

19. At all material times, Certified Crane owned, or had lawful possession of a GMK7550 crane (the "Crane").

20. At all material times, Plaintiff insured Certified Crane and the Crane pursuant to a policy of insurance, Policy Number MKLM7IM0054026 (the "Policy").

21. Upon information and belief, Defendant Whiting-Turner was a general contractor for the construction of a commercial store in Portland, Texas (the "Project").

22. Upon information and belief, Defendant Whiting-Turner retained Defendant Leinneweber as a subcontractor to manufacture, fabricate, and/or construct concrete wall panels for the Project.

23. Upon information and belief, Defendant Leinneweber retained Defendant Chuko Concrete to manufacture, fabricate, design, construction, and/or test the subject concrete wall panels, including placing the rebar within the concrete wall panels.

24. Upon information and belief, Defendant Whiting-Turner hired Cool River as a subcontractor to erect and rig the subject concrete wall panels.

25. Upon information and belief, Defendant Intertek was retained by Cool River to design and/or test the subject concrete wall panels.

4

26. Upon information and belief, Defendant RSS participated in the design, fabrication, manufacture, testing, and/or rigging of the subject concrete wall panels.

27. Defendant Cool River rented the Crane from Certified Crane for use at the Project.

28. On or about June 16, 2023, one of the subject concrete wall panels fell on the Crane while Defendants worked on the Project causing significant damages to the Crane (the "Incident").

29. As a direct and proximate result of the Incident, Certified Crane sustained damages in the amount of $3,204,267.00.

30. As a result of the June 16, 2023 Incident, and pursuant to terms and conditions of the Policy, MAIC made payments to, or on behalf of, Certified Crane in the amount of $3,204,267.00.

31. As a result of the payments made to, or on behalf of, Certified Crane, and pursuant to the terms and conditions of the Policy, Plaintiff, MAIC, is legally, equitably and contractually subrogated to the rights of Certified Crane to the extent of its payments.

## COUNT I

### FIRST CAUSE OF ACTION
### NEGLIGENCE & GROSS NEGLIGENCE
### AGAINST THE WHITING-TURNER CONTRACTING COMPANY

32. Plaintiff hereby incorporates all preceding paragraphs by reference as if fully set forth herein.

33. At all material times, Whiting-Turner owed a duty to Certified Crane, and therefore Plaintiff, to exercise reasonably prudent and ordinary care in, among other things, its general contracting work at the Project, its selection and supervision of subcontractor, and in its construction of the subject concrete wall, through its agents, representatives, and employees.

34. Whiting-Turner breached this duty by acting or failing to act in one or more of the

following respects:

    a. Failing to properly retain, train, or supervise its subcontractors, including Defendant Leinneweber and Defendant Cool River;

    b. Failing to properly oversee the construction and/or erection of the subject concrete wall as to avoid the risk of damaging the Crane;

    c. Failing to properly inspect its work and/or the work of its employees, agents, licensees, contractors, and/or subcontractors;

    d. Failing to ensure that the services performed at the Project complied with all applicable codes, ordinances, statutes, laws, and applicable industry standards of care;

    e. Otherwise failing to exercise reasonably prudent and ordinary care in performing general contracting services at the Project; and

Such other acts of negligence revealed during discovery.

35. Upon information and belief, Defendant Whiting-Turner held contractual or actual control over each of its subcontractor's work.

36. The aforementioned negligence and gross negligence directly and proximately caused the June 16, 2023 incident and damages to the Crane.

## SECOND CAUSE OF ACTION
## NEGLIGENCE & GROSS NEGLIGENCE
## AGAINST LEINNEWEBER CONCRETE CONSTRUCTION, LLC

37. Plaintiff hereby incorporates all preceding paragraphs by reference as if fully set forth herein.

38. At all material times, Leinneweber owed a duty to Certified Crane, and therefore

6

Plaintiff, to exercise reasonably prudent and ordinary care in, among other things, its fabrication, manufacture, and/or construction of the subject concrete wall panel, through its agents, representatives, and employees.

39. Defendant Leinneweber breached this duty by acting or failing to act in one or more of the following respects:

   a. Constructing and/or manufacturing the subject concrete wall panels without the proper spacing between the metal rebar and the edge of the subject wall panels;

   b. Constructing and/or manufacturing the subject concrete wall panels without the proper tensile strength at the edge of the panel;

   c. Failing to construct the wall panels to industry specifications;

   d. Failing to construct the wall panels in accordance with the applicable code;

   e. Failing to construct the wall panels in accordance with the design plans; and

   f. Such other acts of negligence revealed during discovery.

40. The aforementioned negligence and gross negligence directly and proximately caused the June 16, 2023 incident and damages to the Crane.

### THIRD CAUSE OF ACTION
### NEGLIGENCE & GROSS NEGLIGENCE
### AGAINST IRON MAN STEEL, LLC d/b/a COOL RIVER STEEL

41. Plaintiff hereby incorporates all preceding paragraphs by reference as if fully set forth herein.

42. Defendant owed a duty to Certified Crane, and therefore Plaintiff, to exercise reasonably prudent and ordinary care in, among other things, its erection of the subject concrete wall panels, through its agents, representatives, and employees.

43. Defendant breached this duty by acting or failing to act in one or more of the following respects:

   a. Failing to properly erect the subject concrete wall panels to avoid the risk of collapse;

   b. Detaching the rigging from the wall panels when the panel was not yet properly set;

   c. Failing to ensure that the services performed at the Project complied with all applicable codes, ordinances, statutes, laws, and applicable industry standards of care;

   d. Otherwise failing to exercise reasonably prudent and ordinary care in performing its rigging and erection services at the Project; and

   Such other acts of negligence revealed during discovery.

44. The aforementioned negligence and gross negligence directly and proximately caused the June 16, 2023 incident and damages to the Crane.

## FOURTH CAUSE OF ACTION
## BAILMENT
## AGAINST DEFENDANT COOL RIVER STEEL

45. Plaintiff hereby incorporates all preceding paragraphs by reference as if fully set forth herein.

46. Defendant Cool River rented the Crane from Certified Crane (and therefore Plaintiff) for use on the subject concrete wall panel erection at the Project.

47. Certified Crane delivered and Defendant Cool River thereafter took possession of the Crane as evidenced by the rental agreement between the parties.

48. Defendant Cool River had a duty to Certified Crane to protect Certified Crane's

8

bailed goods – the Crane – from damage.

49. Thereafter, the Crane was destroyed and Defendant Cool River failed to re-deliver the Crane to Certified Crane in the same condition as per the written agreement.

50. Due to Defendant Cool River's breach of the aforementioned duties Certified Crane's bailed goods – the Crane – was caused to be destroyed.

51. The aforementioned breach of duties directly and proximately caused the June 16, 2023 incident and damages to the Crane and constitutes an action for bailment.

## FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT AND INDEMNIFICATION
## AGAINST DEFENDANT COOL RIVER STEEL

52. Plaintiff hereby incorporates all preceding paragraphs by reference as if fully set forth herein.

53. Certified Crane and Defendant Cool River entered into a valid rental contract for Defendant Cool River to rent the subject crane from Certified Crane.

54. Under the terms of the subject rental contract, Defendant Cool River had a duty to protect Certified Crane's crane from damage and to indemnify and hold harmless Certified Crane from damages to the crane.

55. Defendant Cool River breached the subject rental agreement when the subject crane was destroyed and Defendant Cool River failed to indemnify Certified Crane for the aforementioned damages.

56. The aforementioned breach of contract and failure to indemnify directly and proximately caused and/or contributed to the resulting damages incurred by Plaintiff.

## SIXTH CAUSE OF ACTION
## NEGLIGENCE & GROSS NEGLIGENCE
## AGAINST MARTIN MACIAS D/B/A CHUKO CONCRETE

57. Plaintiff hereby incorporates all preceding paragraphs by reference as if fully set forth herein.

58. At all material times, Chuko Concrete owed a duty to Certified Crane, and therefore Plaintiff, to exercise reasonably prudent and ordinary care in, among other things, its fabrication, manufacture, and/or construction of the subject concrete wall panel, through its agents, representatives, and employees.

59. Defendant Chuko Concrete breached this duty by acting or failing to act in one or more of the following respects:

   a. Constructing and/or manufacturing the subject concrete wall panels without the proper spacing between the metal rebar and the edge of the subject wall panels;

   b. Constructing and/or manufacturing the subject concrete wall panels without the proper tensile strength at the edge of the panel;

   c. Failing to construct the wall panels to industry specifications;

   d. Failing to construct the wall panels in accordance with the applicable code;

   e. Failing to construct the wall panels in accordance with the design plans; and

   f. Such other acts of negligence revealed during discovery.

60. The Incident and resultant damages that occurred on or about June 16, 2023 at the Project were a direct and proximate result of Chuko Concrete's negligence, gross negligence, carelessness, recklessness and/or wanton and/or willful and/or negligent acts and/or omissions as averred above.

61. As a direct and proximate result of Chuko Concrete's negligence, gross negligence, carelessness, recklessness and/or wanton and/or willful and/or negligent acts and/or omissions,

MAIC's Insured, Certified Crane, suffered substantial damages and losses in an amount of $3,204,267.00.

62. As a direct and proximate result of Chuko Concrete's negligence, gross negligence, carelessness, recklessness and/or wanton and/or willful and/or negligent acts and/or omissions, MAIC made payments to or on behalf of Certified Crane pursuant to the terms and conditions of the Policy.

63. As a result of the payments made to or on behalf of Certified Crane and pursuant to the terms and conditions of the Policy, MAIC is legally, equitably, and contractually subrogated to the rights of Certified Crane.

WHEREFORE, Plaintiff, Markel American Insurance Company, as subrogee of Certified Crane & Rigging Services, LLC, demands judgment in its favor and against Defendant, Martin Macias d/b/a Chuko Concrete, individually, jointly, severally, or in the alternative, on Count VI of the Complaint for compensatory damages in the amount of $3,204,267.00, together with interest, attorneys' fees, costs of suit, and such other and further relief as the Court deems just and proper.

## SEVENTH CAUSE OF ACTION
## NEGLIGENCE & GROSS NEGLIGENCE
## AGAINST PROFESSIONAL SERVICE INDUSTRIES, INC. D/B/A INTERTEK PSI

64. Plaintiff hereby incorporates all preceding paragraphs by reference as if fully set forth herein.

65. At all material times, Intertek owed a duty to Certified Crane, and therefore Plaintiff, to exercise reasonably prudent and ordinary care in, among other things, its fabrication, manufacture, testing, and/or construction of the subject concrete wall panel, through its agents, representatives, and employees.

66. Defendant Intertek breached this duty by acting or failing to act in one or more of

the following respects:

    a. Constructing, designing, testing, and/or manufacturing the subject concrete wall panels without the proper spacing between the metal rebar and the edge of the subject wall panels;

    b. Constructing, designing, testing, and/or manufacturing the subject concrete wall panels without the proper tensile strength at the edge of the panel;

    c. Failing to construct and/or test the wall panels to industry specifications;

    d. Failing to construct and/or test the wall panels in accordance with the applicable code;

    e. Failing to construct and/or test the wall panels in accordance with the design plans; and

    f. Such other acts of negligence revealed during discovery.

67. The Incident and resultant damages that occurred on or about June 16, 2023 at the Project were a direct and proximate result of Intertek's negligence, gross negligence, carelessness, recklessness and/or wanton and/or willful and/or negligent acts and/or omissions as averred above.

68. As a direct and proximate result of Intertek's negligence, gross negligence, carelessness, recklessness and/or wanton and/or willful and/or negligent acts and/or omissions, MAIC's Insured, Certified Crane, suffered substantial damages and losses in an amount of $3,204,267.00.

69. As a direct and proximate result of Intertek's negligence, gross negligence, carelessness, recklessness and/or wanton and/or willful and/or negligent acts and/or omissions, MAIC made payments to or on behalf of Certified Crane pursuant to the terms and conditions of

the Policy.

70. As a result of the payments made to or on behalf of Certified Crane and pursuant to the terms and conditions of the Policy, MAIC is legally, equitably, and contractually subrogated to the rights of Certified Crane.

WHEREFORE, Plaintiff, Markel American Insurance Company, as subrogee of Certified Crane & Rigging Services, LLC, demands judgment in its favor and against Defendant, Professional Service Industries, Inc. d/b/a Intertek PSI, individually, jointly, severally, or in the alternative, on Count VII of the Complaint for compensatory damages in the amount of $3,204,267.00, together with interest, attorneys' fees, costs of suit, and such other and further relief as the Court deems just and proper.

### EIGHTH CAUSE OF ACTION
### NEGLIGENCE & GROSS NEGLIGENCE
### AGAINST REINFORCING STEEL SUPPLY INC.

71. Plaintiff hereby incorporates all preceding paragraphs by reference as if fully set forth herein.

72. At all material times, RSS owed a duty to Certified Crane, and therefore Plaintiff, to exercise reasonably prudent and ordinary care in, among other things, its fabrication, manufacture, testing, selling, distributing, designing, and/or construction of the subject concrete wall panel, through its agents, representatives, and employees.

73. Defendant RSS breached this duty by acting or failing to act in one or more of the following respects:

   a. Constructing, designing, selling, distributing, and/or manufacturing the subject concrete wall panels without the proper spacing between the metal rebar and the edge of the subject wall panels;

13

  b. Constructing, designing, selling, distributing, and/or manufacturing the subject concrete wall panels without the proper tensile strength at the edge of the panel;

  c. Failing to construct and/or design the wall panels to industry specifications;

  d. Failing to construct and/or design the wall panels in accordance with the applicable code;

  e. Failing to construct and/or design the wall panels in accordance with the design plans; and

  f. Such other acts of negligence revealed during discovery.

74. The Incident and resultant damages that occurred on or about June 16, 2023 at the Project were a direct and proximate result of RSS's negligence, gross negligence, carelessness, recklessness and/or wanton and/or willful and/or negligent acts and/or omissions as averred above.

75. As a direct and proximate result of RSS's negligence, gross negligence, carelessness, recklessness and/or wanton and/or willful and/or negligent acts and/or omissions, MAIC's Insured, Certified Crane, suffered substantial damages and losses in an amount of $3,204,267.00.

76. As a direct and proximate result of RSS's negligence, gross negligence, carelessness, recklessness and/or wanton and/or willful and/or negligent acts and/or omissions, MAIC made payments to or on behalf of Certified Crane pursuant to the terms and conditions of the Policy.

77. As a result of the payments made to or on behalf of Certified Crane and pursuant to the terms and conditions of the Policy, MAIC is legally, equitably, and contractually subrogated to the rights of Certified Crane.

WHEREFORE, Plaintiff, Markel American Insurance Company, as subrogee of Certified Crane & Rigging Services, LLC, demands judgment in its favor and against Defendant, Reinforcing Steel Supply Inc., individually, jointly, severally, or in the alternative, on Count IX of the Complaint for compensatory damages in the amount of $3,204,267.00, together with interest, attorneys' fees, costs of suit, and such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff, Plaintiff Markel American Insurance Company, as subrogee of Certified Crane & Rigging Services, LLC, hereby demands a trial by jury as to all issues.

Respectfully submitted,

**LAW OFFICES OF ROBERT A. STUTMAN, P.C.**

DATED: May 2, 2025

/s/ Zachary M. Groover
Zachary M. Groover
State Bar No. 24055595
3740 N. Josey Lane, Suite 222
Carrollton, Texas 75007
Telephone: (469) 782-9797 ext. 156
Facsimile: (215) 565-2988
Email:   grooverz@stutmanlaw.com

ATTORNEY FOR PLAINTIFF